UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 10-2-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JIMMY D. CORNETT, | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Can the government convict someone for possessing a gun when there is no evidence he either actually possessed it or intended to ever possess it? No. Therefore, two of defendant Jimmy D. Cornett's ("Cornett") three gun convictions must be vacated. The four other convictions, however, remain.

## BACKGROUND

A federal grand jury returned an indictment against Cornett and his co-defendant, James Perry, on January 21, 2010. R. 1. They were both charged with conspiring to manufacture methamphetamine (count one), manufacturing methamphetamine and/or aiding and abetting the manufacture of methamphetamine (count two), and possessing equipment, products, and materials used to manufacture methamphetamine and/or aiding and abetting the possession (count three). *See* 21 U.S.C. §§ 846, 841(a)(1), 843(a)(6); 18 U.S.C. § 2. They were also charged with several gun crimes: possession of a .22 caliber rifle in furtherance of a drug trafficking crime and/or aiding and abetting that possession (count four), possession of

a .22 caliber rifle after a felony conviction (count five), and possession of a 12 gauge shotgun after a felony conviction (count six). *See* 18 U.S.C. §§ 2, 924(c), 922(g)(1).

Perry pled guilty to counts two and four, R. 74, while Cornett proceeded to trial. It was the government's theory at trial that methamphetamine was being manufactured in a stolen trailer on Cornett's property. The Martin County sheriff received information that the stolen trailer was on Cornett's property near his house. On August 11, 2009, the sheriff and several deputies arrived at 6031 Rockhouse Road—which they knew to be Cornett's home—to investigate the theft of the trailer. R. 98, Trial Transcript ("Tr. 1") at 4-6. The trailer was on the property, approximately eighty feet from Cornett's house. Tr. 1 at 22; R. 99, Trial Transcript ("Tr. 2") at 41. Cornett gave the officers permission to search the trailer for a serial number. Tr. 1 at 6-7. James Perry was sitting outside of the trailer, and once the officers entered they observed materials used to make methamphetamine. *Id.* at 7-8. Just inside the doorway, directly opposite the methamphetamine materials, was a .22 caliber rifle. *Id.* at 9-10, 14. After later obtaining a warrant, *id.* at 14-15, the deputies searched Cornett's home and found a 12 gauge shotgun propped against an inside wall near the back door. *Id.* at 59. They also found various items linking Cornett to the residence.[1] No fingerprints were recovered from either of the firearms. Tr. 2 at 32.

---

[1]Photographs of the items found in the house were admitted into evidence. *See* Gov't Ex. 4C (pistol holder in the bedroom); Gov't Ex. 4D (pistol ammunition in the bedroom); Gov't Ex. 4F (Jimmy Cornett checkbook found in the safe in the bedroom); Gov't Ex. 4G (license receipt with Jimmy Cornett's name on it); Gov't Ex. 4H (mail addressed to Jimmy Cornett at 6031 Rockhouse Road); Gov't Exs. 4I, 4J, 4K, 4L (photographs of the Cornetts); Gov't Exs. 4M, 4N, 4O (the kitchen with dishes and food out); and Gov't Ex. 4P (the washing machine).

No one saw Cornett in the trailer that day, and the government produced no evidence that he had ever been inside. The government established that Cornett ran power cords from his home out to the trailer to provide Perry electricity. *Id.* at 22, 45. Kentucky "Meth-Check" records showed that Cornett and Perry purchased Sudafed, which contains pseudoephedrine used to make methamphetamine, together on at least one occasion. Tr. 1 at 21; Tr. 2 at 17. That same type of pseudophedrine—120 mg tablets—was used to mix the methamphetamine cooking in the trailer. Tr. 2 at 18-19.

Cornett testified in his own defense that he knew nothing about the methamphetamine or the .22 caliber rifle inside the trailer, although he admitted running the power lines out to the trailer. *Id.* at 41-42, 45-46. Cornett also testified that he had moved out of the residence at 6031 Rockhouse Road and knew nothing about the 12 gauge shotgun inside his house. In support, Michael Litton testified that the 12 gauge shotgun was his and that he had placed it inside Cornett's house just hours before the sheriff arrived. *Id.* at 33-34. A records search could not identify the owner of the shotgun. *Id.* at 31.

Cornett properly preserved his Rule 29 motion by moving both at the close of the government's case and at the close of his case. The Court denied the motion as to counts one, two, and three, and reserved ruling as to counts four, five, and six. R. 83. The jury returned a guilty verdict on all counts. R. 85.

## DISCUSSION

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When analyzing

3

an insufficiency of the evidence claim, the Court views the evidence in the light most favorable to the government. *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (citations omitted).

The motion for judgment of acquittal for the first three counts, all involving the production of methamphetamine, are denied for the reasons stated at trial. The government showed that Cornett purchased pseudoephedrine in the same amounts used in the methamphetamine production on his property. He provided Perry with the electricity necessary to run the meth-producing generator. A reasonable jury could find that by possessing and providing these instrumentalities, Cornett participated in the conspiracy and at least aided Perry in the methamphetamine production.

The issue here as to all three gun counts is the same—whether Cornett knowingly possessed the firearm. To meet its burden under 18 U.S.C. § 922(g)(1), the government must show that (1) Cornett had been previously convicted of a felony; (2) each firearm crossed a state line prior to the possession; and (3) Cornett knowingly possessed the rifle (count five) and the shotgun (count six). *United States v. Schraene*, 331 F.3d 548, 560 (6th Cir. 2003) (citing *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998)). Similarly, under 18 U.S.C. § 924(c), the government must prove that (1) Cornett is guilty of a drug trafficking crime; (2) he knowingly possessed the rifle; and (3) the possession of the rifle was in furtherance of a drug trafficking crime. *United States v. Kuehne*, 547 F.3d 667, 680-81 (6th Cir. 2008). In this case, the issue comes down to whether the government presented sufficient proof regarding the possession element.

Possession may be actual or constructive and need not be exclusive. *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005). Cornett was not seen with either gun, so there was no actual possession in this case. That a defendant "knowingly has the power and the intention at a given time to exercise dominion and control over an object" establishes constructive possession. *Id.* With regard to a home, the Sixth Circuit "has repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space." *United States v. Malone*, 308 F. App'x 949, 952-3 (6th Cir. 2009) (collecting cases). The government showed that Cornett lived at 6031 Rockhouse Road, and thus the jury could conclude he had possession over its contents, including the 12 gauge shotgun. The government did not, however, present sufficient evidence to link Cornett to the .22 rifle in the trailer.

## I. Count six - 18 U.S.C. § 922(g)(1) possession of the 12 gauge shotgun

Cornett argues that the government did not prove he knowingly possessed the 12 gauge shotgun found at his residence. R. 97 at 4. "A jury is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (internal quotation marks and citations omitted). There is no dispute that the 12 gauge shotgun was found inside 6031 Rockhouse Road. The question is whether Cornett lived there and in turn exercised dominion or control over the shotgun.

Cornett testified that he moved out of the house at 6031 Rockhouse Road two weeks prior to his arrest, and that he returned because he did some of his work out of that residence. Tr. 2 at 43, 45. But the government presented ample evidence from which the jury could conclude that

5

he still resided there. The officers found mail, checks, and other paperwork with Cornett's name and the 6031 Rockhouse Road address. Tr. 1 at 41, 49. They also found clothes in the laundry room, dishes in the kitchen, and ammunition throughout the house, suggesting that someone still lived there. *Id.* at 50. Cornett was present outside of 6031 Rockhouse Road on August 11 when the police arrived. Cornett conceded that the land remained his property. *Id.* at 49-50. Moreover, Cornett definitely exercised control over the premises when he allowed deputies to check for a serial number on the trailer. Finally, Sheriff Preece testified that he had been to 6031 Rockhouse Road approximately eight times and always knew Cornett to live there, tr. 1 at 30, including within the two weeks preceding the arrest, *id.* at 24.

The Court must "make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990). In *United States v. Tyus*, "mail scattered throughout the house, which included bills and a court notice, was addressed to no one but Tyus and to nowhere but 25952 Norfolk" was ample evidence to prove that Tyus lived at the house and possessed the drugs and guns located therein. No. 09-1495, 2010 WL 2161824, at *2 (6th Cir. May 28, 2010). The court reached this conclusion despite the fact that the Michigan Secretary of State listed a different address for Tyus. *Id.* While Tyus argued that the mail and other items only showed his previous residence in the home, the court held that it "may be a permissible view of the evidence, but it is by no means a mandatory one. The jury's choice to find that Tyus lived at the house at that time and therefore constructively possessed the drugs and guns 'was a rational one.'" *Id.* (quoting *United States v. Arnold*, 486 F.3d 177, 182 (6th Cir. 2007) (en banc)). *Cf. United States v. Hartman*, 213 F. App'x 396, 402 (6th Cir. 2007)

(evidence of an official ID card, a prescription drug bottle, several pieces of mail, bank checks and deposit slips, and store receipts more than a month old was sufficient to show defendant resided at address and constructively possessed drugs found therein); *United States v. Monroe*, 90 F.App'x 460, 463 (6th Cir. 2004) (defendant's presence at residence when police arrived, vehicles associated with him in the driveway, and an address book and receipts in his name found in the house were sufficient for a rational trier of fact to conclude he possessed weapons found in the house).

## II. Count five - 18 U.S.C. § 922(g)(1) possession of the .22 caliber rifle

In contrast with the shotgun, the rifle was found inside the trailer located on Cornett's property, eighty feet away from the residence. The government presented absolutely no evidence that placed Cornett inside the trailer or that he actually possessed the rifle. And there was insufficient evidence for a jury to find that he exercised dominion over the trailer, where the rifle was found.

While a finding of constructive possession may rest upon "[p]roof that the person has dominion over the premises where the firearm is located," the government did not show that Cornett had dominion over the trailer. *Hadley*, 431 F.3d at 507 (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (internal quotation marks and citation omitted)). Unlike his home on the same property, the trailer was not filled with Cornett's personal belongings or other indicia that he spent time within its walls. Besides the pseudoephedrine he purchased with Perry, nothing of Cornett's was found inside the trailer. The trailer was on Cornett's property, he supplied power to it, and he purchased Sudafed that a jury could

reasonably conclude was the same as that found inside the trailer. Based on these things, the jury could have found that Cornett had *some* control over the trailer. But that is not enough to show that he had dominion over the trailer and all of its contents. *See United States v. Bailey*, 553 F.3d 940, 945 n.3 ("The corollary [to the dominion rule] . . . is that nonexclusive possession does not establish 'dominion over the premises' sufficient to show constructive possession.").

If there is no dominion over a premises where the gun is found—meaning the gun is not found inside the defendant's living space—the government must show "knowledge of, access to, and an intent to exercise control over the gun" to show constructive possession. *Id.* at 946; *see United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) ("There must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some stake in [it], some power over [it]."). Just being somewhere near the gun is not enough; presence alone cannot show the requisite knowledge, power, or intent to control. *United States v. Davis*, 577 F.3d 660, 672 (6th Cir. 2009). In *Davis*, a witness had seen the defendant with the gun previously, and a police officer saw him place something under the seat in his car where the gun was later found. *Id.* All of these things combined were enough to sustain a conviction. But simply being in a car where a gun is found, for example, without further proof of possession of the car would alone not establish the required connection between a defendant and the gun. *Bailey*, 553 F.3d at 946 (evidence was insufficient to show possession when Bailey testified that he borrowed the car from a friend and that others used it the night he was arrested); *see also United States v. Sizemore*, 76 F. App'x 708, 713 (6th Cir. 2003) (evidence that the defendant had been sleeping in the trailer on his property where the guns were located tipped the scales in favor

of sufficiency to sustain the § 924(c) count).

Cornett was not inside the trailer when the police arrived and found the gun. He was not even outside the trailer—Perry was sitting in the doorway while Cornett was headed around his house and toward the road. In such a situation, "where the inference of dominion and control at the time of the arrest is weak, [courts] require[] significantly more persuasive evidence to 'tip the scale in favor of sufficiency.'" *United States v. Grubbs*, 506 F.3d 434, 441 (6th Cir. 2007). Here, there is none. Drawing inference upon inference can only reasonably bring the jury to the conclusion that at some point Cornett was inside the trailer and saw the rifle. Presence inside the trailer alone does not show constructive possession of its contents.

Is it possible that Cornett alone brought the trailer to his property, set up a methamphetamine lab, and brought the rifle into the trailer in order to protect his criminal operations? It may be. But "[e]vidence that at most establishes no more than a choice of reasonable probabilities cannot be said to be sufficiently substantial to sustain a criminal conviction." *United States v. Nechovski*, No. 08-4640, 2010 WL 1377876, at *7 (6th Cir. Apr. 7, 2010) (quoting *United States v. Saunders*, 325 F.2d 840, 843 (6th Cir. 1964)). Without placing Cornett with the rifle or showing his dominion over the trailer, a reasonable jury could not reach the conclusion that he possessed the rifle. Cornett's § 922(g)(1) conviction for possession of the rifle (count five) must be vacated.

### III. Count four - 18 U.S.C. § 924(c)

Possession of a firearm—here, the .22 caliber rifle—is clearly a critical element of sustaining a conviction under 18 U.S.C. § 924(c) for using a firearm in furtherance of a drug

9

trafficking crime. *United States v. Kuehne*, 547 F.3d 667, 680-81 (6th Cir. 2008). For the reasons already discussed, the government did not sufficiently prove possession of the rifle. Thus, it follows that it did not sufficiently prove that Cornett violated § 924(c).

**Aiding and abetting**

The indictment alternatively charged Cornett with aiding and abetting a § 924(c) violation under 18 U.S.C. § 2; the jury may have found him guilty under either statutory provision. The government also failed to meet its burden under the aiding and abetting theory. "[T]he essence of the crime of aiding and abetting is the defendant's offering assistance or encouragement to his principal in the commission of a substantive offense." *United States v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000) (quoting *United States v. Ledezma*, 26 F.3d 636, 642 (6th Cir. 1994)). As the jury was instructed, proof that Cornett may have known Perry possessed the rifle in furtherance of drug trafficking, even if he was there when it happened, is not enough to find Cornett guilty of aiding and abetting. *See Ledezma*, 26 F.3d at 641("To prove aiding and abetting, the government must show that Zajac knew that the principals possessed cocaine with the intent to distribute it, *and that Zajac assisted in their plan* to deliver the cocaine.") (emphasis added).

In order to be convicted of aiding and abetting, Cornett had to have somehow assisted in Perry's plan to possess the rifle in furtherance of a drug trafficking crime. The government presented not a shred of evidence that he did so. Providing the trailer's electricity alone is not enough. Otherwise, every landlord that provides as much could arguably possess everything in his tenant's apartment. While the jury was able to find that such assistance, coupled with the

pseudoephedrine purchase, was sufficient to convict Cornett of the conspiracy to produce methamphetamine charge, that same logic simply does not flow to the gun charge. Of course, had Cornett provided Perry ammunition or even cleaning solution for his gun, it may be a different story.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendant's motion for a directed verdict, R. 97, is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** as to counts four and five; **DENIED** as to count six; and **DENIED** as to counts one, two, and three for the reasons previously given at trial as well as herein.

This the 26th day of August, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge