**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION -- AT PIKEVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff,**<br><br>**V.**<br><br>**JIMMY D. CORNETT,**<br>    **Defendant.** | **CRIMINAL NO. 7:10-2-KKC**<br><br><u>**OPINION AND ORDER**</u> |

    This matter is before the Court on the defendant's emergency motion (DE 291) for his immediate release from prison. The defendant was originally convicted of conspiring to manufacture methamphetamine and aiding and abetting in that crime and of being a convicted felon in possession of a firearm. By judgment dated November 16, 2011, the Court sentenced the defendant to a prison term of 97 months.

    After being released from prison on that term, Cornett twice violated the conditions of his supervised release. On the most recent violation, by judgment dated December 17, 2019, the Court sentenced Cornett to 14 months in prison.

    He moves the Court to modify that sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." The defendant asserts that he faces a high risk of death from the novel coronavirus disease COVID-19 because FCI Gilmer, where he is incarcerated, has failed to take adequate steps to protect prisoners from the virus.

    Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), a motion for compassionate release could be brought by only the director of the Bureau of Prisons (BOP), not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for such relief on his own, but only if he has first "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

bring a motion on the defendant's behalf" or if 30 days have lapsed since the warden of the defendant's facility received the defendant's request to file a motion on his behalf, whichever is earlier. 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The defendant does not assert that he has met either of these prerequisites to filing this motion. Instead, he argues that the Court should waive these prerequisites given the dangers posed by COVID-19. These prerequisites are jurisdictional, however, meaning that this Court has no power to grant relief on a motion for compassionate release unless the prerequisites are met.

The Supreme Court has recently addressed whether statutory filing prerequisites should be deemed to limit the jurisdiction of the court. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019). As would be expected, it all depends on the wording of the statute at issue. "If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id*. (quoting *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 515-16 (2006)) (brackets omitted). In *Fort Bend*, the Supreme Court determined that Title VII's requirement that a plaintiff file a complaint with the EEOC before filing an action in court was not jurisdictional because it does not "speak to a court's authority" or "refer in any way to the jurisdiction of the district courts." *Id*. at 1850-51 (quoting *E.P.A. v. EME Homer City Generation*, *L.P.*, 572 U.S. 489, 512 (2014) and *Arbaugh*, 546 U.S. at 515).

Unlike the Title VII provisions, however, §3582(c) does speak to the Court's authority to modify a defendant's sentence after it has been imposed. The statute explicitly states that this Court "may not" modify a prison term except in certain delineated circumstances. One of these

2

circumstances is when a defendant brings a motion for compassionate release, but only if the defendant has first fully exhausted his administrative remedies or given the warden of the prison where he is incarcerated 30 days to respond to the defendant's request that the BOP file such a motion on his behalf. Those circumstances do not exist here. Thus, by the plain language of the statute, the Court "may not" modify the defendant's sentence.

While the Sixth Circuit has not addressed this issue, the Third Circuit has, also in the context of a defendant's motion for compassionate release that cited COVID-19 concerns. The Third Circuit determined that that the defendant's failure to comply with the statutory prerequisites before asking the court for compassionate release was "a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Further, the mandatory language of the statute "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). With a statutory exhaustion requirement, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to." *Id*. at 1857. "[M]andatory exhaustion regimes, foreclose[e] judicial discretion." *Id*. Here, the rules set by Congress prohibit this Court from modifying a defendant's sentence unless the defendant first exhausts the BOP's administrative remedies, or the warden fails to timely act on the defendant's request.

The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important. *See Raia,* 2020 WL 1647922, at *2 ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" amid the risks posed by

3

COVID-19). The requirement recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan.

In his March 26, 2020 memorandum to the BOP director addressing the COVID-19 pandemic, the Attorney General recognized that "many inmates will be safer in BOP facilities" but that, for other inmates, "home confinement might be more effective in protecting their health." (DE 95-1, Memorandum.) He directed the BOP to "consider the totality of the circumstances for each individual inmate," including the defendant's age and vulnerability, the security level of the facility in which the defendant is incarcerated, the inmate's conduct while in prison, the inmate's score under PATTERN, the inmate's re-entry plan, and the inmate's danger to the community. In his April 3, 2020 memorandum, the Attorney General made the finding that "emergency conditions are materially affecting the functioning of the [BOP]," but directed the BOP to continue making "the careful, individualized determinations BOP makes in the typical case." (DE 95-2, Memorandum.) The Attorney General recognized that "[e]ach inmate is unique and each requires the same individualized determinations that we have always made in this context." The BOP is the institution with the expertise to conduct this analysis in the first instance, not a court.

On April 5, 2020, the BOP announced that it "has begun immediately reviewing all inmates who have COVID-19 risk factors . . . to determine which inmates are suitable for home confinement." https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp. This review is being taken automatically by the BOP. The BOP has specifically advised that "[i]nmates do not need to apply to be considered for home confinement." *Id*. "Case management

4

staff are urgently reviewing *all* inmates to determine which ones meet the criteria established by the Attorney General." *Id*. (emphasis added).

The statute itself provides an exception to the exhaustion requirement where the warden fails to respond to the defendant's request within 30 days. Given the directive of the Attorney General in his April 3, 2020 memorandum that the BOP move "with dispatch" and that "time is of the essence," it is expected that wardens will conduct their analyses well before the end of the 30-day period. The BOP states that it has "increased resources to review and make appropriate determinations as soon as possible." *Id*. (emphasis added). The Court, however, has no authority to alter the 30-day statutory time period.

Cornett also asks the Court to order that all video of the daily operations at FCI Gilmer be preserved and that the Court conduct an in-camera viewing of the video to determine whether FCI Gilmore is taking proper measures to protect inmates from the health risks posed by COVID-19. The Court has no grounds to grant this relief on this motion for compassionate release. If Cornett wishes to challenge the sufficiency of the actions taken by FCI Gilmore officials in reaction to the health risks posed COVID-19, he must file a claim to that effect.

For all these reasons, the Court hereby ORDERS that the defendant's emergency motion (DE 291) for his immediate release from prison is DENIED.

Dated April 20, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY